## United States District Court District of Puerto Rico

### AFFIDAVIT

I, Michael Villanueva Acevedo, a Special Agent with the Department of Homeland Security Investigations, hereinafter referred to as HSI, being duly sworn, depose and state as follows:

### BACKGROUND

1. I am a Special Agent of the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), San Juan, Puerto Rico and have been so employed since 2022. I am an investigative or law enforcement officer of the United States who is empowered to conduct investigations of or to make arrests for offenses enumerated in 18 U.S.C. § 2516. As a Special Agent, my responsibilities include conducting investigations of the alleged manufacture, distribution and possession of controlled substances, importation of controlled substances, smuggling of goods into the United States, firearm's violations, and other related offenses.

2. I have attended the Homeland Security Investigations Special Agent Training (HSISAT) at the Federal Law Enforcement Training Center in Glynco, Georgia. I was trained in conducting investigations related to general violations and narcotics smuggling, which includes distribution activities where investigations commonly conducted are related to violations of Titles 8, 18, 19, 21 and 31 of the United States Code (USC). I have had approximately 600 hours of training by the Georgia Peace Officer Standards and Training Council (POST). I am a graduate of Savannah State University with a Bachelor of Science in Criminal Justice. I served as a Police Officer with the Savannah Police Department for approximately three years. I have participated in the execution of numerous search/arrest

warrants throughout the city of Savannah, Georgia and as a result, have participated in the seizure of evidence to include firearms and narcotics.

3. Because this affidavit is submitted for the limited purpose of establishing probable cause justifying the issuance of an arrest warrant, I have not included details of every aspect of this investigation. I am thoroughly familiar with the information contained in this Affidavit, either through personal investigation or through discussions with other law enforcement officers who have interviewed individuals or personally have obtained information, which they in turn have reported to me.

4. The facts and information contained in this affidavit are based on my personal knowledge, as well as upon information received in my official capacity from other individuals, including other federal, state, and local law enforcement officers. Because this affidavit is being submitted for the limited purpose of securing a criminal complaint charging Ilario D'OLEO-Rosario for 18 U.S.C. § 922(g)(5)– Possession of a firearm by a prohibited person and 8 USC 1326 Illegal Reentry into the U.S. I have set forth only the facts that I believe are necessary to establish probable cause to support this criminal complaint.

## Facts In Support of Probable Cause For Criminal Complaint

5. On April 19, 2025, at approximately 12:27 AM, PRPB Agents Rivera-Mendez (Badge # 37082) and 2nd Lieutenant Ortiz (Badge # 7-19041) were conducting preventative patrols in the areas of Calle Rexach and Calle Juan Ponce de León, Barrio Obrero, Puerto Rico. During patrol, PRPB Agent Rivera-Mendez observed a gold Toyota Corolla bearing Puerto Rico license plate number FGY902 driving in the oncoming traffic lane (left lane) and swerving in and out of lanes. PRPB Agent Rivera-Mendez initiated a traffic stop, but the vehicle did not stop immediately. A short time later, the driver finally stopped the vehicle.

6. Upon making contact with the driver, later identified as Ilario Ernesto D'OLEO Rosario (hereafter referred to as D'OLEO-Rosario), PRPB Agent Rivera-Mendez identified himself and explained the reason for the stop. Agent Rivera-Mendez observed that D'OLEO-Rosario exhibited the following signs of impairment: bloodshot eyes, slurred speech, and a strong odor of alcohol. Additionally, PRPB Agent Rivera-Mendez noted the presence of an open bottle of Corona beer in the vehicle's cup holder.

7. Shortly after being stopped, D'OLEO-Rosario fled the scene in his vehicle. PRPB Agent Rivera-Mendez pursued him and was able to catch up to him. D'OLEO-Rosario stopped his vehicle on Calle Brazil, Barrio Obrero, in front of residence #609, which he claimed as his home. PRPB Agent Rivera-Mendez instructed D'OLEO-Rosario to turn off the vehicle place his hands on the steering wheel. D'OLEO-Rosario then exited the vehicle without being ordered to do so. PRPB Agent Rivera-Mendez instructed him to place his hands on the trunk of the vehicle and not to move. D'OLEO-Rosario was then told to place his hands behind his back and was informed by Agent Rivera-Mendez that he was being arrested. At this point, D'OLEO-Rosario attempted to flee on foot. PRPB Agent Rivera-Mendez grabbed D'OLEO-Rosario by his shirt, preventing him from escaping.

8. D'OLEO-Rosario then turned around and pushed PRPB Agent Rivera-Mendez with his hands. PRPB Agent Rivera-Mendez issued multiple commands, ordering him to get on the ground, but D'OLEO-Rosario failed to comply. D'OLEO-Rosario then ran toward the driver's seat of the vehicle and re-entered the gold Toyota Corolla.

9. While attempting to remove D'OLEO-Rosario from the vehicle, PRPB Agent Rivera-Mendez noticed a firearm in plain view on the front passenger seat within D'OLEO-Rosario's reach. PRPB Agent Rivera-Mendez ordered D'OLEO-Rosario not to touch the

firearm and to show his hands and exit the vehicle. However, D'OLEO-Rosario leaned toward the passenger seat, grabbed the firearm, and threw it within the vehicle. PRPB Agent Rivera-Mendez then deployed a Taser. Despite being tased, D'OLEO-Rosario continued resisting PRPB Agent Rivera-Mendez's commands. PRPB Agent Rivera-Mendez deployed the Taser a second time, causing D'OLEO-Rosario to weaken, allowing PRPB Agent Rivera-Mendez to pull him out of the vehicle.

10. After being removed from the vehicle, D'OLEO-Rosario attempted to flee on foot again. PRPB Agent Rivera-Mendez deployed the Taser a third time, causing him to fall to the ground. While PRPB Agent Rivera-Mendez attempted to handcuff him, D'OLEO-Rosario tucked his arms between his body and the ground, refusing to comply. Backup officers arrived at the scene, and they were able to secure D'OLEO-Rosario's arms and place him in handcuffs. D'OLEO-Rosario was placed in a marked police unit, and his Miranda rights were read to him, including a reference to charges of intoxication.

11. D'OLEO-Rosario admitted to PRPB Agent Rivera-Mendez that he did not possess a license to carry a firearm.

12. A breathalyzer test was administered by PRPB Agent Rivera-Mendez, showing a blood alcohol content (BAC) of 0.174%. Inside the gold Toyota Corolla, agents seized a Glock 27 Gen 4 .40 caliber, serial number BHEW592 which was on the passenger side floorboard. The gold Toyota Corolla was later seized by the Puerto Rico Police Bureau (PRPB) for further investigation.

13. PRPB Agent Rivera-Mendez confirmed that the firearm had a magazine inserted containing nine rounds but did not have a chambered round. D'OLEO-Rosario informed PRPB Agent Rivera-Mendez that he did not have a Social Security number and was in the

process of obtaining legal documentation. He also stated that the firearm belonged to someone he had been with earlier in the evening, but he could not recall who, stating that he was too drunk to remember.

14. During the encounter, D'OLEO-Rosario reportedly made statements to the PRPB officers and Agent Rivera-Mendez indicating that he would rather be deported than arrested. D'OLEO-Rosario further admitted that he had no valid Social Security Number or Identification to be in the United States legally.

15. D'OLEO-Rosario was transported to the PRPB Traffic Unit San Juan Precinct and held in custody. Later that day at approximately 11:45 am, investigators from the Homeland Security Investigations (HSI) Public Safety Group (PSG) arrived at the precinct. The HSI PSG investigators advised D'OLEO-Rosario of his Miranda rights in Spanish, his native language. D'OLEO-Rosario waived his rights, consented to provide a statement to federal authorities, and signed the ICE Form 73-025.

16. During an interview with HSI PSG investigators, D'OLEO-Rosario D'OLEO-Rosario stated he does not possess any valid U.S. identification or documentation but claims to have an active application with USCIS for legal documentation, though he has not received any approval letters. D'OLEO-Rosario disclosed that he originally entered the United States illegally in 2004 via a small boat (yawl) and was deported to the Dominican Republic in 2012. D'OLEO-Rosario also stated he re-entered the United States illegally in 2014, again via a yawl, landing in Aguadilla, Puerto Rico.

17. D'OLEO-Rosario admitted to consuming approximately 4 beers earlier in the evening and claimed to be unaware of the presence of a firearm in the vehicle. D'OLEO-Rosario stated that the gold Toyota Corolla is registered under his name but is regularly used by seven to

eight coworkers. According to D'OLEO-Rosario, no one else drove the vehicle on the day of the incident. D'OLEO-Rosario further admitted to becoming aggressive with PRPB Agent Rivera-Mendez, explaining that D'OLEO-Rosario was already at his residence and believed an arrest was unwarranted.

18. D'OLEO-Rosario acknowledged being tased due to rebellious behavior toward Agent Rivera-Mendez. D'OLEO-Rosario stated that he did not recall attempting to hide the firearm but suggested that, if video evidence shows otherwise, such actions could be attributed to intoxication. D'OLEO-Rosario denied seeing the firearm in the possession of anyone else. Additionally, D'OLEO-Rosario stated that he consciously remembers approximately 90% of the events from that evening, with the remaining 10% being unclear due to the level of intoxication.

19. The firearm, identified as a Glock 27 Gen 4 .40 caliber under serial number BHEW592, was confirmed to be stolen property by federal database checks.

20. The images of the firearm are displayed below:



21. HSI PSG investigators confirmed through law enforcement databases that D'OLEO-Rosario was unlawfully present in the United States without any pending procedures after having been previously deported in December of 2012, in violation of 8 U.S.C. § 1326 (Reentry After Deportation). Additionally, D'OLEO-Rosario's possession of the firearm as an alien unlawfully present in the United States violated 18 U.S.C. § 922(g)(5) (Alien in Possession of a Firearm).

22. Based on the facts of the case, D'OLEO-Rosario is in violation of federal law. D'OLEO-Rosario's admission to reentering the United States illegally after deportation, combined with his possession of a firearm while unlawfully present in the country, establishes probable cause for charges under 8 U.S.C. § 1326 and 18 U.S.C. § 922(g)(5).

I declare that the foregoing is true and correct to the best of my knowledge.

MICHAEL S VILLANUEVA ACEVEDO
Digitally signed by MICHAEL S VILLANUEVA ACEVEDO
Date: 2025.04.19 19:33:01 -04'00'

Michael Villanueva
Special Agent
Homeland Security Investigations

Subscribed and sworn pursuant to FRCP 4.1 at 8:20PM by telephone, this 19th day of April 2025.

Marshal D. Morgan
United States Magistrate Judge
District of Puerto Rico